IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

TERESA LYNN GRAY,
     Plaintiff,

vs.                             Case No.: 5:18cv61/EMT

NANCY A. BERRYHILL, Acting
Commissioner of the Social Security
Administration,
     Defendant.
_____/

## MEMORANDUM DECISION AND ORDER

This case has been referred to the undersigned magistrate judge for disposition

pursuant to the authority of 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, based on the

parties' consent to magistrate judge jurisdiction (*see* ECF Nos. 9, 10). It is now before

the court pursuant to 42 U.S.C. § 405(g) of the Social Security Act ("the Act"), for

review of a final decision of the Commissioner of the Social Security Administration

("Commissioner") denying Plaintiff's applications for disability insurance benefits

("DIB") under Title II of the Act, 42 U.S.C. §§ 401–34, and for supplemental security

income ("SSI") benefits under Title XVI of the Act, 42 U.S.C. §§ 1381–83.

Upon review of the record before this court, it is the opinion of the undersigned that the findings of fact and determinations of the Commissioner are supported by substantial evidence; thus, the decision of the Commissioner should be affirmed.

I.  PROCEDURAL HISTORY

On August 1, 2014, Plaintiff filed applications for DIB and SSI, and in each application she alleged disability beginning July 10, 2010; she subsequently amended the onset date to May 28, 2014 (tr. 27).[1] Her applications were denied initially and on reconsideration, and thereafter she requested a hearing before an administrative law judge ("ALJ").  A hearing was held on August 4, 2016, and on December 7, 2016, the ALJ issued a decision in which he found Plaintiff "not disabled," as defined under the Act, at any time through the date of his decision (tr. 27–36).  The Appeals Council subsequently denied Plaintiff's request for review.  Thus, the decision of the ALJ stands as the final decision of the Commissioner, subject to review in this court. Ingram v. Comm'r of Soc. Sec. Admin., 496 F.3d 1253, 1262 (11th Cir. 2007).

---

[1] All references to "tr." refer to the transcript of the Social Security Administration record filed on June 19, 2018 (ECF No. 12).  The page numbers refer to those found on the lower right-hand corner of each page of the transcript, as opposed to those assigned by the court's electronic docketing system or any other page numbers that may appear.

## II.  FINDINGS OF THE ALJ

In denying Plaintiff's claims, the ALJ made the following relevant findings (*see* tr. 27–36):

(1)    Plaintiff met the insured status requirements of the Act through December 31, 2015[2];

(2)    Plaintiff had not engaged in substantial gainful activity since May 28, 2014, the amended alleged onset date;

(3)    Plaintiff had the following severe impairments: history of carotid artery disease status post endarterectomy; chronic obstructive pulmonary disease (COPD); and history of transient ischemic attack;

(4)    Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. part 404, Subpart P, Appendix 1;

(5)    Plaintiff had the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) such that she could occasionally lift/carry twenty pounds and frequently lift/carry ten pounds; she could stand/walk for six hours out of an eight-hour workday and sit for six hours out of an eight-hour workday; and she was to avoid concentrated exposure to humidity, dust, fumes, and other pulmonary irritants;

(6)    Plaintiff was capable of performing past relevant work in housekeeping, as this work did not require the performance of work-related activities precluded by her RFC; and

---

[2] Thus, the time frame relevant to Plaintiff's claim for DIB is May 28, 2014 (date of alleged onset), through December 31, 2015 (date last insured).  The time frame relevant to her claim for SSI is August 1, 2014 (the date she applied for SSI) through December 7, 2016 (the date the ALJ issued his decision).  *See* Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005) (indicating that SSI claimant becomes eligible to receive benefits in the first month in which she is both disabled and has an SSI application on file).

(7)     Plaintiff was not under a disability, as defined in the Act, from May 28, 2014, through the date of the decision.

III.     STANDARD OF REVIEW

Review of the Commissioner's final decision is limited to determining whether the decision is supported by substantial evidence from the record and was a result of the application of proper legal standards.  Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991) ("[T]his Court may reverse the decision of the [Commissioner] only when convinced that it is not supported by substantial evidence or that proper legal standards were not applied."); see also Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).  "A determination that is supported by substantial evidence may be meaningless . . . if it is coupled with or derived from faulty legal principles."  Boyd v. Heckler, 704 F.2d 1207, 1209 (11th Cir. 1983), superseded by statute on other grounds as stated in Elam v. R.R. Ret. Bd., 921 F.2d 1210, 1214 (11th Cir. 1991).  As long as proper legal standards were applied, the Commissioner's decision will not be disturbed if in light of the record as a whole the decision appears to be supported by substantial evidence. 42 U.S.C. § 405(g); Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998); Lewis, 125 F.3d at 1439; Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995).  Substantial evidence is more than a scintilla, but not a preponderance; it is "such relevant evidence as a reasonable person

would accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 59 S. Ct. 206, 217, 83 L. Ed. 126 (1938)); Lewis, 125 F.3d at 1439.  The court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner.  Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (citations omitted).  Even if the evidence preponderates against the Commissioner's decision, the decision must be affirmed if supported by substantial evidence.  Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986).

The Act defines a disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  To qualify as a disability the physical or mental impairment must be so severe that the claimant is not only unable to do her previous work, "but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id*. § 423(d)(2)(A).  Pursuant to 20 C.F.R. § 404.1520(a)–(g),[3] the Commissioner analyzes a disability claim in five steps:

---

[3] In general, the legal standards applied are the same regardless of whether a claimant seeks DIB or SSI, but separate, parallel statutes and regulations exist for DIB and SSI claims (*see* 20

1.     If the claimant is performing substantial gainful activity, she is not disabled.

2.     If the claimant is not performing substantial gainful activity, her impairments must be severe before she can be found disabled.

3.     If the claimant is not performing substantial gainful activity and she has severe impairments that have lasted or are expected to last for a continuous period of at least twelve months, and if her impairments meet or medically equal the criteria of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, the claimant is presumed disabled without further inquiry.

4.     If the claimant's impairments do not prevent her from doing her past relevant work, she is not disabled.

5.     Even if the claimant's impairments prevent her from performing her past relevant work, if other work exists in significant numbers in the national economy that accommodates her RFC and vocational factors, she is not disabled.

The claimant bears the burden of establishing a severe impairment that keeps her from performing her past work.  20 C.F.R. § 404.1512.  If the claimant establishes

---

C.F.R. §§ 404, 416).  Therefore, citations in this Order should be considered to refer to the appropriate parallel provision.  The same applies to citations of statutes or regulations found in quoted court decisions.

such an impairment, the burden shifts to the Commissioner at step five to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform. MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986). If the Commissioner carries this burden, the claimant must then prove she cannot perform the work suggested by the Commissioner. Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).

IV.    PLAINTIFF'S PERSONAL, EMPLOYMENT, AND MEDICAL HISTORY

A.    Personal and Employment History

At Plaintiff's hearing, held August 4, 2016, she testified that she last worked in 2010 as a housekeeper/maid, supervising six others (tr. 49). She quit her job because she could not physically do the work anymore because she was out of breath much of the time and her back hurt (tr. 51–52). In May of 2014, Plaintiff experienced headaches, difficulty turning her neck, and a lack of vision in her left eye, prompting her to see Keith B. Banton, M.D., and ultimately to undergo surgery for a stroke-like condition (tr. 52). Plaintiff indicated that after the surgery her neck difficulties "released some," her headaches cleared up, and her vision was restored except for occasional fuzziness (tr. 53, 55, 64).

Plaintiff also described having a problem with maintaining balance, which she compensates for by holding onto the wall or by stopping momentarily when she walks (tr. 53–55). Plaintiff also stated she experiences shortness of breath, which results in her not being able to stand long and not being able to walk more than fifty feet without getting out of breath (tr. 54). Plaintiff reported having reduced strength in the left arm (tr. 64–65). She also stated that, possibly as a result of her stroke, she experiences occasional slurred speech, dizziness, and "pass-out spells" that occur approximately once every other month (tr. 65–66). Plaintiff stated that she takes Zoloft for depression but had never been to a mental health specialist, psychologist, or counselor (tr. 55–56). She indicated that she gets depressed sometimes because she cannot do things she used to be able to do, which causes her to be anxious or frustrated with herself (tr. 68–69). When asked what her most difficult problems are, Plaintiff identified her breathing and balance problems (tr. 62).

As for daily activities, Plaintiff stated that she is unable to do certain chores such as cleaning, mopping, sweeping, and vacuuming because they cause her to be out of breath (tr. 57). She stated shopping is difficult for her because of having to walk the aisles and needing to reach for items on shelves (tr. 58). She reported that she sometimes cooks for the family, though, and that she can iron and fold clothes because she can do those tasks while sitting down (tr. 57–58). Plaintiff mentioned that she is

able to drive but does not drive often (tr. 58). She estimated that during the course of an eight-hour day she can stand for about an hour and a half, that she lies down for two hours, and that she can sit for the rest of the time (tr. 68). When asked what activities she engages in at home, Plaintiff stated, "Just watching my soaps" (tr. 66).

B.     Relevant Medical History[4]

Plaintiff established medical care at the office of Dr. Banton on May 28, 2014, complaining of loss of vision in one eye, headaches, blurred vision, shortness of breath, and dyspnea upon exertion (tr. 30). Dr. Banton referred her to the emergency room for further evaluation, where testing revealed amaurosis fugax, carotid artery stenosis, hypertension, and thrombocytopenia (*id.*). On May 29, 2014, Plaintiff was evaluated by Ashish K. Gupta, M.D., who diagnosed a symptomatic transient ischemic attack and noted that Plaintiff would require a right carotid endarterectomy, which was successfully performed on June 11, 2014 (*id.*). Dr. Gupta noted that Plaintiff's symptoms improved after the operation, and three months later she was 100% healed and back to her normal activities (tr. 34).

---

[4] Most information in this section is derived from the ALJ's opinion, as indicated by references to transcript pages 27 through 36. The undersigned has also included herein the weight assigned by the ALJ to certain medical and lay opinions of record that are relevant to the issues raised in this appeal.

Plaintiff was also noted to have a history of COPD, as treatment records showed her to have commonly complained of shortness of breath upon exertion (tr. 30). Treatment notes from Dr. Banton, however, indicated a normal chest examination, as well as even, unlabored respiration (tr. 34). While Plaintiff also had a history of hypertension, it was being managed with medication (tr. 30).

The ALJ noted that Plaintiff complained of back pain during a medical consultative examination with Krzysztof Lewandowski, M.D., on August 31, 2016 (which post-dates the time frame for her DIB claim). However, the ALJ could find no objective evidence to indicate any injury or symptomatology relating to her back (tr. 30). Dr. Lewandowski's own medical impressions excluded back pain. Although Dr. Lewandowski acknowledged that Plaintiff did complain about "back pain for a long time," he noted that there was no mention of back pain in any of her medical records (tr. 495). His own physical examination revealed no musculoskeletal impairment, and he also remarked that Plaintiff moved without difficulty and without assistance during the visit and dressed and undressed without help (*id.*).

The ALJ also noted Dr. Lewandowski's medical source statement, which evaluated Plaintiff as being able to lift up to twenty pounds continuously and up to 100 pounds occasionally, and to carry up to ten pounds continuously, up to twenty

pounds frequently, and up to 100 pounds occasionally (tr. 34). Dr. Lewandowski also opined that Plaintiff could sit, stand, and walk for eight hours each during an eight-hour workday (*id*.). The ALJ gave substantial weight to the opinion of Dr. Lewandowski, finding it consistent with the evidence of record (tr. 35).

As for other opinion evidence, the ALJ gave substantial weight to the opinion of state agency medical consultant Loc Kim Le, M.D., who stated that Plaintiff could perform light work so long as she could avoid concentrated exposure to humidity and fumes, odors, dusts, gases, and poor ventilation (*id*.).

The ALJ gave limited weight to the opinion of Owen D. Oksanen, M.D., whose September 24, 2012, consultative examination report predated Plaintiff's onset date. The ALJ did note Dr. Oksanen's determination that Plaintiff appeared to have no significant difficulty with sitting, standing, walking, lifting, carrying, handling objects, hearing, speaking, or traveling, as well as his comment that "[r]ight now [Plaintiff] looks like she could work" (tr. 35, 383).

As for Plaintiff's mental health, the ALJ noted her medical history of depression and anxiety, for which she has been prescribed Vistaril and Zoloft (tr. 31). The ALJ also noted Plaintiff's testimony that she had never received specialized mental health therapy or counseling (*id*.). Plaintiff reported problems with memory,

completing tasks, understanding, and following instructions, and her husband stated that he has to repeat instructions to her before she understands them. However, Dr. Lewandowski found "her neurological examination was normal" (tr. 34). Further, the ALJ noted Plaintiff's statement that she watches soap operas on television, which suggested to him that she had "adequate attention and concentration for the task, as she did not indicate that she is unable to follow the storyline of programs she watches" (tr. 31).

The ALJ accorded substantial weight to the opinion of state agency psychological consultants Catherine Nunez, Ph.D., and Val Bee, Psy.D., who found Plaintiff to have mild restrictions in her daily living activities, in social functioning, and in maintaining concentration, persistence or pace (tr. 35). The ALJ found their opinions to be consistent with the weight of the record, particularly in light of the fact that she was not receiving any specialized mental health counseling

Finally, the ALJ noted statements made by Plaintiff's husband to the effect that she had difficulty with physical activity, memory, and concentration (tr. 35). However, the ALJ pointed out that her husband offered a lay opinion based upon casual observation and not based on objective medical examination and testing. As such, the ALJ found the husband's statements did not outweigh the other medical

evidence in the file concerning Plaintiff's functional abilities, and accordingly gave them little weight (*id.*).

### C.    Other Information Within Plaintiff's Claim File

On May 19, 2016, prior to her hearing before the ALJ, Plaintiff's counsel sent a letter to the ALJ asking, in part, that the ALJ order a psychological evaluation for her (tr. 338–39). Counsel explained that Plaintiff likely had memory loss and that she had complained of such since her stroke surgery in 2014. Counsel also noted that Plaintiff had "presented to my office with obvious memory issues and appeared confused, having to call her husband on the phone for matters I thought she would remember" (tr. 338). Counsel also noted that an MRI of Plaintiff's brain from May 2014 "was read as abnormal due to microvascular white matter ischemic gliosis" (tr. 338). The ALJ did not order the psychological evaluation.

## V.    DISCUSSION

Plaintiff first contends that the ALJ erred in failing to adequately develop the record regarding Plaintiff's mental impairments, specifically her memory, by not ordering a psychological consultative examination.

The ALJ addressed Plaintiff's neurological and mental health issues in his opinion, noting that although Plaintiff complained of headaches, dizziness, and fatigue, her neurological examination results were found to be normal. While Plaintiff had a transient ischemic attack, after which she underwent carotid surgery, she had essentially a full neurological recovery. The ALJ acknowledged Plaintiff's history of depression and anxiety but noted that she never received mental health counseling and that she had no difficulties with personal care due to mental impairments. While the ALJ also recognized Plaintiff's assertion that she had problems with memory as well as completing tasks and following instructions, and that her husband reported that he has to repeat instructions to her before she understands, the ALJ cited the fact that Plaintiff regularly watched soap operas on television, thus indicating that she had the ability to remember and follow the storylines of the shows. In the opinions of Drs. Nunez and Bee, the psychological consultants to whom the ALJ accorded substantial weight, each noted that Plaintiff had no neurological deficits, that Plaintiff had ceased taking her medication for depression, and that she had reported that her mental issues did not affect her ability to work (tr. 80, 111–12).

Against this backdrop, Plaintiff argues that the ALJ should have ordered a psychological examination to evaluate her memory issues. The ALJ has a basic duty to develop the record fully and fairly. <u>Wilson v. Apfel</u>, 179 F.3d 1276, 1278 (11th

Cir. 1999). In accordance with that duty, "the ALJ may order a physical or mental examination of a claimant at the government's expense; but the ALJ is not required to order an examination if it is not necessary to enable the ALJ to make a disability determination." Outlaw v. Barnhart, 197 F. App'x 825, 828 (11th Cir. 2006) (citing Wilson and 20 C.F.R. § 404.1517); *see also* Ingram, 496 F.3d at 1269; Castle v. Colvin, 557 F. App'x 849, 853 (11th Cir. 2014) (finding that a consultative examination was unnecessary where claimant had not sought treatment for his knee, denied musculoskeletal issues, and engaged in activities inconsistent with disabling knee problems). Ultimately, it is the claimant who bears the burden of producing evidence of disability. Ellison v. Barnhart, 355 F.3d 1272, 1276 (11th Cir. 2003). "An ALJ's responsibility to develop the record cannot require the ALJ to order a consultative examination on an issue until 'the plaintiff has satisfied his or her burden to provide objective evidence sufficient to suggest a reasonable possibility that a severe impairment exists.'" Goolsby v. Colvin, No. 2:15-CV-0501-JHE, 2016 WL 5390563, at *6 (N.D. Ala. Sept. 27, 2016) (quoting Bryant v. Barnhart, 36 F. App'x 405, 407 (10th Cir. 2002)).

Plaintiff cites only to her own subjective assertions and her husband's lay observations as evidence in support of her alleged memory problems. She provides no traceable medical condition upon which her alleged memory problems could be

based, and indeed, indications in the record are sparse that Plaintiff even had such a problem. Furthermore, the prevailing medical opinion is that Plaintiff remains functional despite any of her mental issues.

To establish disability based on testimony concerning one's subjective symptoms, a three-part standard must be satisfied. Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002). That is, a claimant must first show evidence of an underlying medical condition and then either (a) objective medical evidence that confirms the severity of the alleged symptoms stemming from that condition, or (b) that the objectively determined medical condition is so severe that it can reasonably be expected to cause the alleged symptoms. *Id.*; Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991). Because Plaintiff has produced no evidence of an underlying medical condition, she cannot establish disability based upon her subjective reporting of memory issues. And, because the ALJ found sufficient evidence in the record from which to make his determination as to her memory issues and mental health problems as a whole, there was no demonstrable need for further medical testing.

As her second ground for relief, Plaintiff contends that the ALJ erroneously evaluated her testimony regarding her pain symptoms. Referring to the Eleventh Circuit "pain standard" recited above, *see* Wilson, *supra*, and quoting Foote v. Chater, 67 F.3d 1553, 1561 (11th Cir. 1995), Plaintiff argues that "pain alone can be

disabling, even when its existence is unsupported by objective medical evidence" (ECF No. 14 at 8). Plaintiff thus contends that the ALJ could not have concluded that Plaintiff was not disabled simply on account of the fact that there was no objective evidence to corroborate her subjective complaints of pain (*see id.* at 10).

Plaintiff either misperceives the pain standard or the ALJ's findings in relation to that standard. In particular, the court notes that the first part of that standard requires Plaintiff to demonstrate evidence of an underlying medical condition. Wilson, 284 F.3d at 1225. Foote is not inapposite, for that case held that "[a] claimant's subjective testimony *supported by medical evidence that satisfies the pain standard* is itself sufficient to support a finding of disability." Foote v. Chater, 67 F.3d 1553, 1561 (11th Cir. 1995) (emphasis supplied). *See also* 20 C.F.R. § 404.1529(a) (eff. Apr. 1, 2016) ("[T]here *must be medical signs and laboratory findings which show that you have medical impairment(s)* which could reasonably be expected to produce the pain . . .") (emphasis added); Foote, 67 F.3d at 1561 (citing § 404.1529 and noting that existence of impairment must first be established before evidence relating to "the intensity, persistence, and functionally limiting effects of pain or other symptoms" is considered "in deciding the issue of disability").

In this case, the ALJ noted Plaintiff's reported experience with back pain, but he also noted that Dr. Lewandowski could find no medically diagnosed condition in

the record that might have been responsible for this pain (tr. 30). Correspondingly, the ALJ concluded that the record contained no medically determinable impairment relating to her back pain issue. Indeed, it is notable that, although Plaintiff in her brief presses the argument that the ALJ improperly discounted her symptoms, the brief fails even to describe any body part responsible for her pain, much less identify a tangible medical condition that might cause that pain. Absent an underlying medical condition, Plaintiff's subjective claim of pain alone cannot establish disability.

VI.    CONCLUSION

For the foregoing reasons, the Commissioner's decision is supported by substantial evidence and should not be disturbed. 42 U.S.C. § 405(g); <u>Lewis</u>, 125 F. 3d at 1439; <u>Foote</u>, 67 F.3d at1560. Furthermore, Plaintiff has failed to show that the ALJ applied improper legal standards, erred in making his findings, or that any other ground for reversal exists.

Accordingly, it is hereby **ORDERED**:

1.      That the decision of the Commissioner is **AFFIRMED**, and this action is **DISMISSED**.

2.      That **JUDGMENT** is entered, pursuant to sentence four of 42 U.S.C. § 405(g), **AFFIRMING** the decision of the Commissioner.

3.      That the Clerk is directed to close the file.

At Pensacola, Florida this 1<u>st</u> day of May 2019.

        <u>/s/ *Elizabeth M. Timothy*</u>
        **ELIZABETH M. TIMOTHY**
        **CHIEF UNITED STATES MAGISTRATE JUDGE**